FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

02 JUN 26 AM 10: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **ALLSTATE INSURANCE COMPANY,** | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | CV-01-N-1666-S |
| vs. | ] | |
| | ] | |
| **CHARLES ENGLE, et al.,** | ] | |
| | ] | |
| Defendant. | ] | |

ENTERED

JUN 2 6 2002

## Memorandum of Opinion

### I.   Introduction

The court has for consideration the motion of plaintiff Allstate Insurance Company (hereinafter "Allstate") for summary judgment, filed April 30, 2002. (Doc. # 20). Allstate contends that it is due a judgment, declaring as a matter of law, that it has no obligation to extend coverage under an Allstate policy to Charles Engle, for an automobile accident made the subject of this declaratory judgment action. Allstate further requests that this court enjoin the defendants Lawrence Farley and Yolanda Deloach (hereinafter "Farley and Deloach") from attempting to collect from Allstate on a judgment obtained from Mr. Engle in the state courts of Alabama for the accident in question. The issues have been briefed by the parties, and the court finds the matter now ripe for decision. Upon due consideration, the court finds the motion of plaintiff Allstate due to be and hereby denied.

31

## II.    Background

On May 26, 1999, Mr. Engle, using a power of attorney for Nell Koenig d/b/a Koenig

Properties and Development, purchased two white 1999 Chevrolet S-10 pickup trucks from

Stokes Chevrolet, Inc. in Clanton, Alabama.  One of the trucks, a six (6) cylinder with an

automatic transmission, bore the vehicle identification number of 1GCCS14X9X8177033

(hereinafter "VIN # 7033").  The other truck, a four (4) cylinder 5-speed with a manual

transmission, bore the vehicle identification number of 1GCCS1443XK208639 (hereinafter

"VIN # 8639").  When Stokes Chevrolet issued and Mr. Engle signed the title applications

for the two trucks, however, each application described its referenced vehicle as bearing

VIN # 8639 and having six (6) cylinders.

On May 27, 1999, Ms. Koenig executed a bill of sale transferring, selling, and

delivering a 1999, six-cylinder Chevrolet S-10 pickup truck bearing VIN # 8639 to her

daughter, Diana K. Vickers, a resident of South Carolina.  Ms. Koenig signed both her own

name and Ms. Vickers's name to the bill of sale, using a power of attorney for Ms. Vickers.

The parties agree, however, that Ms. Koenig remained the registered (Alabama) owner of

the 1999 four-cylinder Chevrolet S-10 pickup truck bearing VIN # 8639 until it was

purchased on December 3, 1999, by an individual not a party to this litigation.  The parties

also agree that Ms. Koenig remains the registered (Alabama) owner of the 1999 six-cylinder

Chevrolet S-10 pickup truck bearing VIN # 7033 to this day.  Based upon the deposition

testimony of Ms. Vickers, it appears that the bill of sale attempted to transfer the 1999 six-cylinder Chevrolet S-10 pickup truck, VIN # 7033.[1]

On June 1, 1999, Mr. Engle was involved in an automobile accident while driving the truck bearing VIN # 7033. The occupants of the other vehicle involved in the accident, a motorcycle, were defendants Farley and Deloach. The accident report describes Mr. Engle as driving a 1999 Chevrolet S-10 owned by Ms. Koenig and lists the VIN as "UNKNOWN" and the insurance company as State Farm. Apparently Mr. Engle's driving record rendered him an excluded driver on Ms. Koenig's State Farm automobile insurance.

The parties dispute to some degree exactly how the purported coverage at issue in this action was obtained and made effective. According to Allstate, Mr. Engle called the Stalvey Insurance Agency in South Carolina on June 15, 1999 – well after the accident underlying this action – to add a vehicle to Vickers's Allstate insurance policy with Vickers's consent. During his conversation, Mr. Engle described the vehicle he wished to add as a 1999 Chevrolet four-cylinder S-10 pickup truck, recently purchased from Stokes Chevrolet, bearing VIN # 8639. Mr. Engle also stated that Ms. Vickers was the registered owner and regular operator of the vehicle. As a result of this conversation, Allstate added VIN # 8639 with four-cylinders to the policy and, thereafter, confirmation of the added vehicle was provided to Ms. Vickers by facsimile and mail.

According to the defendants, Ms. Vickers procured insurance coverage for her new pickup truck. They contend that she called her Allstate Insurance agent Frank R. Stalvey

---

[1] Ms. Vickers stated in her deposition that her mother was going to sell her the six-cylinder truck with the automatic transmission. The only truck meeting this description – considering the trucks from which Ms. Koenig had to choose – was the truck bearing VIN # 7003.

and told Mr. Stalvey that she wished to insure a recently purchased pickup truck. The defendants are noticeably oblique about the timing of Ms. Vickers's conversation with Mr. Stalvey, but several aspects of their account appear undisputed. First, Ms. Vickers did not provide Mr. Stalvey specific details as to the truck but instead authorized her uncle, Mr. Engle, to call with the relevant information at a later time.[2] Second, a 1999 Chevrolet pickup truck was added to Ms. Vickers's Allstate insurance policy, retroactive to the date of purchase, May 27, 1999. Third, the contact made by Ms. Vickers and Mr. Engle regarding the vehicle was accomplished within sixty days of the execution of the bill of sale.

Allstate contends that it insured a four-cylinder truck bearing VIN # 8639, pursuant to the information provided to it (via the agency used by Ms. Vickers) by Mr. Engle. Moreover, Allstate maintains that the binding of this vehicle took place not during the conversation Ms. Vickers had with Mr. Stalvey on May 27, 1999, but when the pertinent information was provided to the Stalvey agency by Mr. Engle on June 15, 1999. Allstate does note, however, that the addition of the vehicle to the policy was retroactive to the date Mr. Engle provided as the date of purchase, May 27, 1999. Furthermore, the policy – which notes the "addition of your 99 Chevy Truck" and confirms the effective date of May 27, 1999 – states the total premium for the "99 Chevy Truck" as $379.70.

As for the events that post-dated the accident, the following appears undisputed. Allstate was not notified of the accident until July 15, 1999. Allstate nonetheless paid the collision benefit under the policy for the damage to the vehicle Mr. Engle drove at the time

_____

[2] It was during this subsequent conversation on June 15, 1999, that Mr. Engle provided Allstate with a vehicle identification number (VIN # 8639) that did not correspond to the vehicle apparently purchased by Ms. Vickers (VIN # 7033).

4

of the accident, apparently under the impression that the vehicle involved in the accident was the insured pickup truck with VIN # 8639. Allstate later learned that the truck for which it paid benefits was the 1999, six-cylinder Chevrolet S-10 pickup truck bearing VIN # 7033, a vehicle not listed on Ms. Vickers' policy. To clarify matters concerning the confusion of the vehicle insured by it, Allstate took sworn statements from Mr. Engle, Ms. Vickers and Ms. Koenig on July 13, 2000. With counsel appearing on his behalf, Mr. Engle stated that defendants Farley and Deloach had not contacted him about the accident and had filed no claim against him. This assertion was confirmed in a letter to Mr. Engle's counsel dated July 17, 2000. Allstate reserved all rights in the letter, but elected not to take legal action to resolve the coverage issues based upon Mr. Engle's representation that no claim had been asserted by defendants Farley and Deloach.

Unbeknownst to Allstate (and contrary to the assertion of Mr. Engle), Farley and Deloach had filed suit against Mr. Engle in the Circuit Court of Jefferson County, Alabama, on April 10, 2000. Service upon Mr. Engle of a summons and complaint was apparently effected on May 6, 2000. On July 20, 2000, Farley and Deloach took a default judgment against Mr. Engle in the total amount of $149,800. Mr. Engle did not report the default judgment to Allstate. In fact, Allstate first learned of the suit and default judgment when counsel for Farley and Deloach advised Allstate of those facts in June of 2001, some fourteen months after the suit was filed and almost a year after the default judgment was taken. Since that time, defendants Farley and Deloach have attempted to collect the judgment against Mr. Engle from Allstate, by way of both verbal inquiries and a written demand that Allstate pay policy limits on the judgment.

Finally, the policy held by Ms. Vickers contains the following relevant provisions. The policy requires a person claiming coverage under it to provide Allstate with notice of a suit:

**What To Do In Case Of An Auto Accident Or Claim**

> If an insured person has an auto accident, we must be informed promptly of all details.  If an insured person is sued as a result of an auto accident, we must be informed immediately.

The policy also states that an "insured person" includes the policyholder, a resident of the policyholder's household, and any other person using the insured auto with permission. An "insured auto" includes (1) any auto described on the declarations page; (2) an additional auto the policyholder becomes the owner of during the policy period; (3) a substitute auto; or (4) a non-owned auto being used with the owner's permission by the policyholder or a resident relative.  A substitute auto is a non-owned vehicle being temporarily used by the policyholder or a resident relative while the insured auto is being serviced or repaired.

The pickup truck driven by Mr. Engle and involved in the accident (VIN # 7033) was not the auto described on the declarations page of Ms. Vickers's policy (VIN # 8639). Moreover, this pickup truck was not the truck purportedly sold to Ms. Vickers by Ms. Koenig on May 27, 1999.  The pickup truck driven by Mr. Engle and involved in the accident was not being used by the policyholder or a resident relative as a substitute for an auto being serviced or repaired at the time of the accident.  In fact, Allstate contends that the vehicle driven by Mr. Engle at the time of the accident was and is regularly driven by him,

and that Ms. Vickers never took possession of the vehicle.  The defendants do not dispute these latter two assertions.

###    III.    Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also DeJulio v. Georgia*, 276 F.3d 1244, 1248 (11th Cir. 2001).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001); *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998).  The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *see also Comer*, *supra*.

7

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150); *see also Comer, supra.*

## IV.    Discussion

### A.    Choice of Law

The parties are in accord as to what law this court should apply in the instant case – the law of South Carolina. The court likewise agrees. A federal court exercising its diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including that state's choice of law rules. *See Boardman Petroleum v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.

8

487 (1941); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The general choice of law rule for contracts in Alabama is *lex loci contractus*, which provides "the law of the state wherein the contract was executed governs questions regarding the validity and interpretation of the contract." *American Nonwovens, Inc. v. Non Wovens Engineering, S.R.L.*, 648 So. 2d 565, 567 (Ala. 1994). In the context of insurance, the policy should be construed by the law of the state where the last act necessary to make the contract took place. *American Motorist Ins. Co. v. Southern Security Life Ins. Co.*, 80 F. Supp. 2d 1280, 1282 (M.D. Ala. 2000). The last necessary act to form an insurance contract is generally the receipt and acceptance of the policy by the named policyholder. *Industrial Chem. & Fiberglass v. North River Ins. Co.*, 908 F.2d 825, 829 n.3 (11th Cir. 1990); *American Motorists Ins. Co.*, 80 F. Supp. 2d at 1282; *Brown Machine Works v. Ins. Co. of North America*, 951 F. Supp. 988, 992 (M.D. Ala. 1996). The court gathers from its review of the parties' submissions that all pertinent transactions related to the insurance policy at issue in this action took place in South Carolina. Most notably, the policy statement confirming the addition of the 1999 Chevrolet pickup truck was sent to Ms. Vickers at her address in South Carolina, and was apparently received and accepted by her at that time. Accordingly, the application of the *lex loci contractus* rule dictates that South Carolina law applies to the insurance policy at issue in this case.

B.     **Scope of Coverage**

Allstate offers several theories as to why the pickup truck being driven by Mr. Engle at the time of the accident was not covered by Ms. Vickers's automobile insurance policy. The gist of its argument, however, turns on the notion that the truck was not an "insured

auto" as that term is defined by the policy.  As the truck is not an "insured auto" Mr. Engle

was not an "insured person" as that term is defined in the policy.  Coverage, therefore, does

not exist.

The policy defines "insured autos" to include, *inter alia*:

(1) Any auto described on the declarations page.  This includes the four
wheel private passenger auto or utility auto you replace it with.

(2) An additional four wheel private passenger auto or utility auto you become
the owner of during the premium period.  This auto will be covered if we
insure all other private passenger autos or utility autos you own.  You must,
however, tell us within 60 days of acquiring the auto.  You must pay any
additional premium.

As to the first category, Allstate maintains that the automobile added to Ms. Vickers's

policy was not the automobile being driven on the day of the accident.  The policy clearly

lists the added truck as bearing VIN # 8639 and having four cylinders.  The truck being

driven by Mr. Engle, however, bears VIN # 7033 and has six cylinders.  Given the plain

language of the policy, the truck does not fall within the first category of insured

automobiles.

As to the second category, Allstate maintains that this automobile was not owned by

Ms. Vickers at the time of the accident or at any time.  Allstate argues that Ms. Koenig

executed a bill of sale for a 1999, six-cylinder Chevrolet S-10 pickup truck bearing VIN #

8639 to Ms. Vickers in the amount of $200.  Allstate then observes that Ms. Koenig retained

title as the registered owner of a 1999, four-cylinder Chevrolet S-10 pickup truck bearing

VIN # 8639 with the Alabama Department of Motor Vehicles until she sold this vehicle to

a third party in late 1999.  As for the 1999, six-cylinder Chevrolet S-10 pickup truck bearing

VIN # 7003 – the truck involved in the accident – Allstate notes that Ms. Koenig has never

relinquished title to that truck.  Allstate further argues that Ms. Vickers has never taken

possession of either pickup truck.  Ms. Vickers cannot be said to be the owner of the truck

bearing VIN # 7003, then, rendering that truck beyond the coverage afforded by the second

category of insured automobiles.  In support of its theory, Allstate directs this court to the

South Carolina Supreme Court case of *Nationwide Mutual Insurance Co. v. Douglas*.  *See*

*Nationwide Mut. Ins. Co. v. Douglas*, 255 S.E.2d 828, 831 (S.C. 1979) (equating ownership

with possession of legal title, pursuant to South Carolina Code § 56-9-20(11)).

Allstate's analysis is incomplete.  The bill of sale describes the exchange between

Ms. Koenig and Ms. Vickers as follows:

> That I, the undersigned (seller) Nell T. Koenig, for and in consideration of the
> sum of $200.00 & assume payments to GMAC of B'ham, lein (sic) holder
> receipt whereof is hereby acknowledged, do hereby sell, transfer and deliver
> to the buyer the following described vehicle: Buyer: Diana K. Vickers, (MAKE,
> YEAR, MODEL) Chevrolet, 1999, PU 6 CLS S10 (VIN) 1GCCS1443XK208639
> . . . . I, Diana K. Vickers, BUYER, do hereby agree to maintain and furnish
> $250 Deductible and Liability Insurance to GMAC as long as said vehicle is
> encumbered to GMAC.

The most notable aspect of this document is the fact that it describes a truck that Ms.

Koenig apparently did not have in her possession.  Rather, it describes a truck that the two

erroneous title applications similarly describe.  Thus, the description in the bill of sale of

the truck bearing VIN # 8639 is not dispositive of any issue presently before the court.  *Cf.*

*Café Assocs., Ltd. v. Gerngross*, 406 S.E.2d 162, 164 (S.C. 1991) (". . . where a contract is

ambiguous or capable of more than one construction, the question of what the parties

11

intended becomes one of fact, and the question should be submitted to the jury."); *Garrett v. Pilot Life Ins. Co.*, 128 S.E.2d 171, 174-75 (S.C. 1962) (same).

Nor is the *Nationwide* case cited *supra*. In the later case of *Tollison v. Reaves*, 289 S.E.2d 163, 164-65 (S.C. 1982), the South Carolina Supreme Court held that, possession of legal title notwithstanding, true ownership existed in a person who "thought he was the owner of the automobile, . . . made the down payment and the subsequent monthly payments, . . . paid for the insurance, and . . . was the sole driver of the automobile." *Tollison*, 289 S.E.2d at 164. In distinguishing *Nationwide*, the *Tollison* court wrote:

> In *Nationwide* the issue was whether the insured could have acquired ownership of a stolen vehicle. Moreover, the court in *Nationwide* cited with approval that portion of the *Bankers Insurance* Co. [*of Pennsylvania v. Griffin*, 137 S.E.2d 785, 787 (S.C. 1964)] case that stated actual ownership was the determinative factor for purposes of automatic insurance clauses. Therefore, we conclude that although respondent Reaves held the title to the automobile, the Grandson was in fact the actual owner.

*Tollison*, 289 S.E.2d at 165. Additional guidance comes from the case of *Unisun Insurance Co. v. First Southern Insurance Co. See Unisun Ins. Co. v. First S. Ins. Co.*, 462 S.E.2d 260, 262 (S.C. 1995) ("A certificate of title constitutes prima facie evidence of vehicle ownership for purposes of insurance coverage, but can be rebutted by evidence showing that someone other than the titleholder was the real owner."). In *Unisun*, the court made the following observation in response to an argument that the presumption of ownership via possession of title had been rebutted:

> This Court has held that under certain circumstances, someone other than the actual titleholder should be deemed the owner for insurance purposes. In those cases, however, the owners' failures to hold title (or its equivalent) resulted from mere technicalities.

12

> Here, Peters' failure to hold the Certificate of Origin for the Subaru was not a mere formality.  In fact, his "exclusive possession and control" of the vehicle was only temporary, as he had a duty to return the vehicle to Subaru Center after the car reached 6,000 miles.  Peters had no duty to maintain insurance on the automobile.  Upon the sale of the vehicle, Subaru Center was entitled to all the proceeds.  These facts clearly distinguish this case from prior cases in which a person not holding title to an automobile nevertheless was found to be the true owner.  Because there are no facts reasonably supporting a finding Peters owned the Subaru, the Court of Appeals correctly found Subaru Center was the sole owner.  Consequently, the First Southern policy provided coverage for the entire amount of the Florida settlement.

*Unisun*, 462 S.E.2d at 262-63.  The most important rule of law guiding the court here, however, is that which states "ownership is a question of fact for purposes of coverage under insurance policies." *Unisun*, 462 S.E.2d at 262.

Considering these cases together, the court concludes that there is a question of fact as to whether Ms. Vickers owns the truck bearing VIN # 7033.  In the absence of any contrary evidence, the bill of sale evidences a transaction obligating Ms. Vickers to pay $200, assume payments due, and maintain insurance on a vehicle while that vehicle remains encumbered to GMAC.  These obligations are incurred in exchange for the sale, transfer and delivery of the truck described.  As the truck described does not exist, the bill of sale is open to interpretation: Ms. Vickers may have agreed to buy the truck bearing VIN # 8369; Ms. Vickers may have agreed to buy the truck bearing VIN # 7033; or Ms. Vickers may have intended to do something else.  In light of her deposition testimony, however, the court is left to conclude – in the absence of evidence to the contrary – that Ms. Vickers intended to buy the truck bearing VIN # 7033.

13

Ms. Koenig does hold title to this vehicle.  Moreover, Mr. Engle appears to be the sole driver of this vehicle – Ms. Vickers having never actually had possession of it. Nonetheless, the remaining evidence in the record sufficiently rebuts the prima facie conclusion of ownership this court might draw from the fact that Ms. Koenig holds title to the vehicle.  Perhaps most importantly, the evidence demonstrates that the possession of title by Ms. Koenig may in part be a result of the confusion created by the duplicate title applications.  The evidence also demonstrates that Ms. Vickers has assumed several financial and legal obligations by virtue of the bill of sale she entered into on May 27, 1999: namely, the obligations to make payments to GMAC and maintain insurance while the vehicle is encumbered with a lien.  Granted the only evidence currently before the court addressing these obligations are Ms. Vickers's insurance policy statements and the bill of sale itself.  But in the absence of anything to the contrary, the court is left to conclude that Ms. Vickers is fulfilling the obligations laid out in the bill of sale.  Finally, the evidence demonstrates that Ms. Vickers believed she was purchasing the truck bearing VIN # 7033.

These facts and the remaining evidence, taken as a whole, raise a question of fact as to whom actually owns the truck bearing VIN # 7003.  Resolution of this question will largely resolve the overarching issue of Allstate's duties and liabilities as a result of the accident involving Mr. Engle and defendants Farley and Deloach.  This question, however, is not for the court to resolve on summary judgment.

C.    **Allstate's Duty to Indemnify Mr. Engle**

The court also believes that, assuming *arguendo* Mr. Engle does qualify for coverage under Ms. Vickers's policy, a question of fact exists as to whether Allstate has a

14

duty to indemnify Mr. Engle for the state court judgment rendered against him or whether

Allstate may decline to exercise that duty given Mr. Engle's failure to provide it notice of

the state court suit.  The evidence submitted by the parties shows that Mr. Engle failed to

provide notice of the suit filed against him by defendants Farley and Deloach following his

service on May 6, 2000; that Mr. Engle failed to inform Allstate of the action when asked

about it under oath on July 13, 2000; and that the state court entered default judgment

against Mr. Engle in the amount of $140,000 on July 27, 2000.  The evidence also shows that

Allstate affirmatively represented to Ms. Vickers and Mr. Engle on or about October 18,

1999, and to the attorney for defendants Farley and Deloach, on or about February of 2000,

that no coverage existed under Ms. Vickers's policy for the accident involving the truck

bearing VIN # 7033.

"Where a question exists as to the failure of an insured to comply with the notice

requirements contained in a liability insurance contract, the burden of proof rests with the

insurer." *Vermont Mut. Ins. Co. v. Singleton*, 446 S.E.2d 417, 421 (S.C. 1994).

> The purpose of a notification requirement is to allow for investigation of the
> facts and to assist the insurer in preparing a defense.  Where the rights of
> innocent parties are jeopardized by a failure of the insured to comply with the
> notice requirements of an insurance policy, the insurer must show substantial
> prejudice to the insurer's rights.

*Vermont Mut. Ins., supra.*  "[P]rejudice is clearly established by the fact that a default

judgment was entered against the insured." *Merit Ins. Co. v. Koza*, 264 S.E.2d 146, 147 (S.C.

1980).  However, "[a] waiver of the contract provision under discussion may be inferred, of

course . . . where the insurer has denied liability and any responsibility for defending the

suit." *Hester v. Harleysville Mut. Ins. Co.*, 190 S.E.2d 487, 489 (S.C. 1972); *see also Hatchett v. Nationwide Mut. Ins. Co.*, 137 S.E.2d 608, 613 (S.C. 1964).

The court is mindful of both Mr. Engle's failure to adhere to the policy provision and his seemingly cavalier denial of the existence of the lawsuit to Allstate when asked about it on July 13, 2000. However, the evidence clearly shows that Allstate affirmatively denied the existence of coverage prior to the commencement of the state court action. Furthermore, the evidence raises a question of what, if anything, Allstate might have done if Mr. Engle had accurately answered the insurance company's inquiries on July 13, 2000. By that time, the state court action had already reached a penultimate stage. The motion for default had been filed, and the actual default judgment was two weeks away from entry. These facts do not establish waiver as a matter of law, but the court believes that they raise sufficient questions so as to preclude their resolution by the court at this juncture in the litigation.

**V.     Conclusion**

For the reasons set forth supra, the court finds that the motion by Allstate for summary judgment is due to be and hereby **DENIED**. The court will enter an order in conformity with this memorandum of opinion.

Done, this _25^TH_ of June, 2002.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE